UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE APPLICATION OF **BRENDAN MCASSEY** and **JFTT Pty Ltd., Trading as Trustee for Joseph Family Trust,** FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782. | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS'
APPLICATION TO TAKE DISCOVERY IN AID OF A FOREIGN PROCEEDING
PURSUANT TO 28 U.S.C. § 1782**

Petitioners Brendan McAssey and JFTT Pty Ltd., trading as trustee for Joseph Family Trust ("Petitioners") submit this Memorandum of Law in support of their application as "interested persons" requesting that the Court authorize the issuance of a targeted subpoena to Bain Capital, LP ("Bain Capital"). The subpoena requests highly relevant documents for use in an ongoing Australian civil proceeding (the "Australian Proceeding") that is quickly approaching a February 22, 2021 trial date.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Brendan McAssey is an Australian national and entrepreneur who founded and built a company called Only About Children Group Pty Ltd ("OAC"), which became a large and profitable Australian childcare operator. JFTT is an Australian entity controlled by Mr. McAssey. Declaration of Jordan Smith ("Smith Declaration"), ¶¶ 2-3.

### I.     Sale of OAC

In August 2016, Mr. McAssey agreed to sell his and JFTT's shares in OAC to an entity controlled by Bain Capital. Through several layers of holding companies, Nemo (BC) HoldCo Pty Ltd (ACN 614 209 880) ("HoldCo") owns all of the shares in OAC. JFTT and Nemo (BC) Cayman, LP ("Nemo Cayman"), in turn, hold most of the shares in HoldCo. The ultimate parent entity of the Nemo entities is Bain Capital, a limited partnership that is based in Boston, Massachusetts. Smith Declaration, ¶ 4.

In exchange for his shares in OAC, Mr. McAssey received up-front consideration and deferred consideration, effectively in the form of "earn out" payments or progress payments. Mr. McAssey became a director of HoldCo and also agreed to a non-compete provision, allegedly

---

[1] This Application is brought on an *ex parte* basis; as noted in the Application, courts routinely grant applications made pursuant to Section 1782 *ex parte*. *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012); *see, e.g.*, *In re In re Porsche Automobil Holding Se*, No. 19-mc-91129, 2020 U.S. Dist. LEXIS 28434, at *2 (D. Mass. Feb. 19, 2020).

prohibiting him from working in the childcare sector for specified periods of time. Smith Declaration, ¶ 5. The OAC transaction is governed by several agreements, including an Earn Out Deed dated October 31, 2016 between Mr McAssey, JFTT, Nemo Cayman and HoldCo ("Earn Out Deed"). This agreement specified Mr. McAssey's right to earn out payments in exchange for the future delivery of childcare centers OAC operated that were being developed but were not yet operational at the time of signing the agreement. Smith Declaration, ¶ 6. Generally, under the agreement, if Mr. McAssey and JFTT elected to develop and deliver a new childcare center to OAC, its EBITDA[2] would be factored into the amount of the earn out payment to be made to them. *Id.* Alternatively, they could elect not to develop and deliver a new childcare center by issuing a "Cessation Notice" to HoldCo. *Id*.

## II. Origins of the Present Dispute

In February 2020, an OAC executive acknowledged to Mr. McAssey in writing that the Earn Out Payment for the year ending December 31, 2019 was $37,467,059.12, with an "Additional Amount" owed of $567,889.90. Thus, for 2019, the total amount owed to Mr. McAssey and JFTT was $38,034,958.02. Smith Declaration, ¶ 7. A few months later, however, in April 2020, Michael Murphy, a Managing Director of Bain Capital based in Sydney, Australia, and a director of HoldCo, sent an email to Mr. McAssey advising that HoldCo was unable to pay the Earn Out Payment because HoldCo allegedly was exercising its right to retain funds to meet other financing and capital requirements. Smith Declaration, ¶ 8.

Under clause 6.1(b) of the Earn Out Deed, if HoldCo cannot pay an Earn Out Payment or related Additional Amount, HoldCo must notify Mr. McAssey and JFTT of: (i) the amount of the "Unpaid Earnout Payment"; and (ii) the Fair Market Value ("FMV") of Ordinary Shares in HoldCo

---

[2] "EBITDA" means Earnings Before Interest, Taxes, Depreciation and Amortization.

as of the "Due Date" (here, April 3, 2020). Smith Declaration, ¶ 9 & Exhibit 1 (Earn Out Deed).[3] In general terms, in the event of an Unpaid Earnout Payment, under clauses 6.1(c)-(d), Mr. McAssey and JFTT may issue an "Election Notice" and elect to receive a certain percentage of any Unpaid Earnout Payment in the form of Ordinary Shares in HoldCo at FMV. *Id.* ¶ 11.

On April 20, 2020, HoldCo sent a letter to Mr. McAssey stating that the Board determined FMV to be zero and claiming that clauses 6.1(c)-(d) of the Earn Out Deed could not operate as intended because the HoldCo shares had no value. On April 24, 2020, counsel for Petitioners sent an Election Notice pursuant to clause 6.1(c) of the Earn Out Deed electing to receive a portion of the amount owing by way of shares in HoldCo and disputing the Board's FMV determination. Smith Declaration, ¶¶ 10-11.

### III.    Claims in the Australian Proceeding

Given HoldCo's wrongful refusal to pay the Earn Out Payment and Additional Amount owed to Petitioners, in May 2020, Petitioners commenced proceedings in the Supreme Court of New South Wales ("NSW Court") against HoldCo and Nemo Cayman. Petitioners have asserted claims against HoldCo for its failure to pay Petitioners the amount owing under the Earn Out Deed. They have asserted claims against Nemo Cayman for its failure to procure that HoldCo has sufficient funds to pay the Earn Out Payment, or to pay HoldCo the amount owing to Petitioners by way of a subscription in shares, as required under the Earn Out Deed. Smith Declaration, ¶¶ 12-13 & Exhibit 2 (Petitioners' claims in the Australian Proceeding).

Documents pertaining to the Board's FMV determination are critical to Petitioners' claims regarding defendants' breaches of the Earn Out Deed. As noted, HoldCo's primary defense is that the Board's calculation of an FMV of zero for HoldCo's shares deprives Petitioners of their right

---

[3] All numbered Exhibits cited herein are attached to the accompanying Declaration of Jordan Smith.

4

to receive a portion of the Earn Out Payment owed to them via the issuance of shares. Smith Declaration, ¶ 18. Petitioners vigorously dispute the validity of this purported FMV determination and believe that it has no support in the documentary record. Any documents related to the Board's FMV determination (or lack thereof) are highly relevant to Petitioners' breach of contract claims in the Australian Proceeding.

HoldCo and Nemo Cayman filed cross-claims against Petitioners in several respects, as amended on December 11, 2020. Relevant here, HoldCo and Nemo Cayman allege that Mr. McAssey breached a non-compete obligation by continuing to develop a new childcare center at the "Deepdene Site," located in Deepdene, Victoria, Australia. Defendants allege that Bambini Childcare Group Pty Ltd ("Bambini Childcare"), an entity Mr. McAssey is alleged to indirectly control, entered into a deed with the owner of the land at the Deepdene Site for development of a childcare center. Defendants further claim that Mr. McAssey appropriated a corporate opportunity belonging to HoldCo, in breach of his fiduciary duties owed to HoldCo, when he acquired an interest in Bambini Childcare. Smith Declaration, ¶ 14. Petitioners, however, issued a Cessation Notice for the Deepdene Site, which entitles them not to deliver the new childcare center to OAC under the Earn Out Deed, and accordingly deny that they have breached any non-compete obligation. Moreover, prior to Mr. McAssey obtaining any interest in Bambini Childcare, HoldCo considered but rejected an opportunity to acquire Bambini Childcare, such that Mr. McAssey did not breach any fiduciary obligations to HoldCo. *Id.* ¶ 15. For these reasons, documents pertaining to the HoldCo Board's decision not to acquire Bambini Childcare are highly relevant to Petitioners' defense to these cross-claims in the Australian Proceeding. *Id.* ¶ 25.

### IV.    Procedural History of the Australian Proceeding

Trial in the NSW Court is scheduled to begin on February 22, 2021. The trial will be conducted from February 22, 2021 to March 7, 2021. After a scheduled recess, the trial will then continue from March 22, 2021 to April 1, 2021. Smith Declaration, ¶ 16.

Under the NSW Court's procedural orders regarding discovery, the time has passed for HoldCo and Nemo Cayman to serve any evidence on which they intend to rely to defend against Petitioners' claims. Only HoldCo served any evidence at all, an affidavit from the aforementioned Michael Murphy of Bain Capital, with attached documents. The evidence that HoldCo produced is woefully inadequate. HoldCo produced a small number of documents, a substantial portion of which were already a matter of public record. In particular, there is almost no support in HoldCo's production for the Board's calculation of FMV as zero. Petitioners raised these concerns in subsequent correspondence with the defendants but in response HoldCo produced only 29 further documents. Throughout this process, HoldCo and Nemo Cayman consistently claimed that they are not in the possession, custody or control of documents supporting the Board's FMV calculation. Smith Declaration, ¶¶ 17-19 & Exhibit 4.

In light of the inadequacies in the discovery process regarding this critical issue, and HoldCo's and Nemo Cayman's claims that they do not have possession, custody and control of relevant documents, Petitioners issued domestic subpoenas in NSW to Mr. Murphy of Bain Capital and OAC. After resisting the subpoena, Mr. Murphy was ordered to produce documents by December 15, 2020. Smith Declaration, ¶ 20. Mr. Murphy has produced only a limited number of documents to Petitioners. *Id.* As the ultimate corporate parent of HoldCo and Nemo Cayman, Bain Capital is likely to hold relevant documents bearing on the FMV issue. *Id.* ¶ 24.

Defendants first presented their amended cross-claims and allegations regarding the Bambini Childcare opportunity on December 11, 2020. They are required to produce supplementary discovery on these claims by January 22, 2021. Given defendants' arbitrary and restrictive approach to the meaning of possession, custody or control, counsel for Petitioners are concerned that Petitioners are unlikely to receive documents relating to the Bambini Childcare issue when HoldCo's supplementary discovery comes due, only a few weeks before trial is scheduled to begin. Smith Declaration, ¶ 21. Petitioners believe that HoldCo declined the Bambini Childcare opportunity based on instructions from a Bain Capital parent entity in the United States, such that relevant documents reside in this District. *Id.* ¶ 25.

## **ARGUMENT**

A district court must conduct two inquiries when presented with a request for discovery under Section 1782: "(1) whether the district court is authorized to grant the request, and (2) if so, whether the district court should exercise its discretion to do so." *In re Peruvian Sporting Goods S.A.C.*, 2018 U.S. Dist. LEXIS 223564 (D. Mass. Dec. 7, 2018). Petitioners' Application meets the threshold statutory requirements for discovery, because Bain Capital is found in this district, the requested discovery is for use in the Australian Proceeding, and Petitioners are interested persons in the foreign proceeding. The relevant discretionary factors all support granting the Application as well, because Bain Capital is not a party to the Australian Proceeding; the NSW Court is receptive to foreign-obtained evidence; and Petitioners are neither evading any foreign proof-gathering restrictions nor imposing an undue burden on Bain Capital by seeking only two narrowly-tailored categories of highly relevant discovery: (1) documents pertaining to the Board's determination of the FMV as zero; and (2) documents pertaining to the Board's rejection of the Bambini Childcare opportunity at the Deepdene Site. The Application should therefore be granted.

### I. Petitioners' Application Meets the Statutory Factors for Authorizing Discovery Under Section 1782

Section 1782 enables parties like the Petitioners here to obtain "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 247 (2004). There are three statutory requirements: (1) a discovery order "issued by '[t]he district court . . . of the district in which [the respondent] resides or is found'"; (2) "the discovery must be 'for use in a proceeding in a foreign or international tribunal'"; and (3) the application is made by an "interested person." *Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 260 (D. Mass. 2010) (quoting 28 U.S.C. § 1782(a)). Petitioners meet all three requirements.

First, Bain Capital, the entity from whom discovery is sought, "is found" in this District. Bain Capital's headquarters is located at 200 Clarendon Street, Boston, Massachusetts. Smith Declaration, ¶ 4; *see In re Valitus, Ltd. for an Order to take Discovery Pursuant to 28 U.S.C. § 1782*, No. 20-mc-91133, 2020 U.S. Dist. LEXIS 203522, at *2 & n.3 (D. Mass. Nov. 2, 2020) (finding that another Bain Capital entity—Bain Capital Holdings (GP), LLC, the owner of a general partner of Bain Capital Holdings, LP, which is the holding company that directly and indirectly owns Bain Capital, LP—resides within the District of Massachusetts for purposes of § 1782).

Second, the proposed discovery is "for use in a proceeding in a foreign or international tribunal," namely, the pending Australian Proceeding in the Supreme Court of New South Wales. A foreign court, like the NSW Court, plainly qualifies as a foreign or international tribunal under Section 1782(a). *See, e.g.*, *Minis v. Thomson,* No. MISC. 14-91050-DJC, 2014 U.S. Dist. LEXIS 54220, at *4-6 (D. Mass. Apr. 18, 2014).

Third, as the plaintiffs in the Australian Proceeding (Smith Declaration, ¶¶ 12-13), Petitioners qualify as "interested persons." 28 U.S.C. § 1782(a). There can be "[n]o doubt litigants are included among . . . the 'interested person[s]' who may invoke § 1782." *Intel,* 542 U.S. at 256.

## II. The Discretionary Factors Fully Support Granting Petitioners' Application

Because all of the statutory requirements are met, the court "is free to grant discovery in its discretion." *In re Application of Republic of Ecuador v. Douglas,* 153 F. Supp. 3d 484, 487 (D. Mass. 2015); *see also Intel*, 542 U.S. at 264. In exercising its discretion, the court must evaluate the following factors: (1) "whether the person from whom discovery is sought is a party to the foreign proceeding, in which case 'the need for § 1782(a) aid generally is not as apparent'"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'"; and (4) "whether the request is 'unduly intrusive or burdensome' to the extent that it should either be 'trimmed' or rejected outright." *In re Schlich*, 893 F.3d 40, 47 (1st Cir. 2018) (quoting *Intel*, at 264-65). All of these discretionary factors strongly support granting this Application to serve a narrow subpoena.

### A. Bain Capital is Not a Participant in the Australian Proceeding

As discussed above, Bain Capital is not a named defendant or cross-claimant in the Australian Proceeding. Not surprisingly, Bain Capital, as a United States entity, has not produced any discovery in the Australian Proceeding, nor does it have any obligation to do so. The information sought by this Application lies outside "the foreign tribunal's jurisdictional reach" and therefore the first *Intel* factor weighs in favor of granting the requested discovery. *In re Porsche*

*Automobil Holding SE*, No. 19-mc-91129-LTS, 2019 U.S. Dist. LEXIS 194103, at *22 (D. Mass. Nov. 6, 2019).

### B. The NSW Court is Receptive to Relevant Foreign Evidence

The NSW Court is receptive to evidence obtained through discovery in the United States. Australian rules of evidence do not prohibit judicial discovery or assistance from foreign courts. In other cases, Australian courts—including the Supreme Court of New South Wales—have accepted evidence obtained from foreign court-supervised discovery proceedings, including under Section 1782. Smith Declaration, ¶ 22; *see In re Optus Admin. Pty Ltd.,* No. 16-mc-80013, 2016 U.S. Dist. LEXIS 22734, at *5 (N.D. Cal. Feb. 24, 2016) (noting that the "Supreme Court of New South Wales is [] receptive to the issuance of the [foreign] subpoena … as a means of gathering relevant information"); *In re Ching Chung Taoist Ass'n of H.K.*, No. 3:16-mc-80157, 2016 U.S. Dist. LEXIS 131686, at *15 (N.D. Cal. Sep. 23, 2016) (finding no indication "that the Australian court would reject information obtained through § 1782 discovery"); *In re Futurecorp Int'l Pty Ltd.,* Case No. 3:12-mc-80267, 2012 U.S. Dist. LEXIS 164400 (N.D. Cal. Nov. 15, 2012) (allowing discovery under § 1782 for use in a New South Wales proceeding). Petitioners satisfy the second *Intel* factor.

### C. Petitioners Do Not Seek to Evade Any Foreign Proof-Gathering Restrictions

Section 1782 does not require that the evidence being sought be discoverable in the foreign proceeding. Instead, the third *Intel* factor—whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"—"boils down to whether the discovery is being sought in bad faith." *In re Valitus, Ltd. for an Order to take Discovery Pursuant to 28 U.S.C. § 1782*, No. 20-mc-91133-FDS, 2020 U.S. Dist. LEXIS 203522, at *20 (D. Mass. Nov. 2, 2020).

Like the Petitioner in *Valitus*, who successfully sought information from a Bain Capital entity based in this District, Petitioners here seek "highly relevant discovery" that has clear probative value in the Australian Proceeding. *Id.* at *21. The requested documents bear directly on the critical liability and damages questions of (1) the Board's determination of FMV; and (2) the Board's decision not to proceed with the Bambini Childcare opportunity at the Deepdene Site. *See, e.g.*, *In re Porsche*, 2019 U.S. Dist. LEXIS 194103 (third factor weighed in favor of discovery when petitioners "provided a legitimate reason" for requested discovery); *Chevron*, 754 F. Supp. 2d at 262 (third *Intel* factor met when request for discovery was "a good faith effort to elicit evidence" with "probative value" in foreign proceedings). Petitioners' good faith is further demonstrated by their extensive efforts in Australia to obtain the requested information, only to be met by assertions from HoldCo and Nemo Cayman that they do not have possession, custody or control of the requested materials. The most likely repository for the sought-after documents is Bain Capital in the United States. Petitioners meet the third *Intel* factor.

### D.  The Requested Discovery is Not Intrusive or Burdensome

Finally, the proposed Subpoena is not unduly intrusive or burdensome and easily meets the requirements of the Federal Rules of Civil Procedure. The Subpoena contains only three requests, limited in both time and scope, pertaining to essentially two categories of highly relevant documents concerning (1) the Board's determination of FMV and (2) HoldCo's rejection of the Bambini Childcare opportunity. As a court in this District has recognized, Bain Capital "is a sophisticated company with substantial experience in gathering and storing vast quantities of information." *In re Valitus*, 2020 U.S. Dist. LEXIS 203522, at *23. The burden imposed on Bain Capital is minimal compared to the potential probative value of the evidence sought.

## **CONCLUSION**

For all of the foregoing reasons, Petitioners respectfully request that the Court enter an Order, pursuant to Section 1782, granting them leave to serve the Subpoena submitted with this Application as Exhibit B.

Dated: December 23, 2020

                                                    Respectfully submitted,

**BRENDAN MCASSEY and JFTT PTY LTD., Trading as Trustee for Joseph Family Trust,**

By their attorneys,

*/s/ Geoffrey A. Friedman*
Geoffrey A. Friedman (BBO # 692771)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
GAFriedman@mintz.com
(617) 542-6000

James Rapore (*pro hac vice application pending*)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
JARapore@mintz.com
(310) 226-7850

*Attorneys for Petitioners*

.